UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DONNA L. HINKLE, on behalf of her son, E.W.H., a minor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO.: 1:15-CV-9-TLS ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

The Plaintiff, Donna L. Hinkle, on behalf of her minor son, E.W.H., seeks review of the final decision of the Commissioner of the Social Security Administration denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. 42 U.S.C. §§ 423, 1383(c). The Plaintiff originally filed an application for SSI in May 2003; and in a determination dated August 6, 2003, an ALJ found that the claimant was disabled as of May 1, 2003. However, on November 20, 2012, following a continuity disability review (CDR), the SSA determined that, as of March 20, 2012, the claimant was no longer disabled.

An ALJ held a hearing on August 8, 2013, at which both the claimant and his father, James Hinkle, testified. On December 4, 2013, the ALJ found that the claimant was not disabled. The Plaintiff, on behalf of the claimant, requested review of the ALJ decision, and on November 14, 2014, the Appeals Council denied the Plaintiff's request for review. On January 12, 2015, the Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. For the following reasons, the ALJ's decision is reversed and remanded for proceedings consistent with this opinion.

## BACKGROUND

**A.     Objective Evidence**

At the time of his first disability determination (i.e., the comparison point decision, or CPD), the claimant was diagnosed with the medically determinable impairments of mild mental retardation and autism under section 12.05C of 20 C.F.R. Part 404, Subpart P, Appendix 1. At this time, the claimant showed universal developmental delays on the Hawaii Early Learning Profile, a comprehensive, on-going assessment for infants and toddlers. (R. 251.) On the Preschool Language Scale-3, an evaluation tool that assesses receptive and expressive language skills in infants and young children, the claimant's language skills were delayed by 20 months, indicating a severe delay. (R. 254.) In March 2003, the claimant met the criteria of listing 112.05C for mental retardation because he had a valid verbal, performance, or full scale IQ of 59 or less.  (R. 317.) His verbal IQ was 57, his performance IQ was 72, and his full scale IQ was 61. (Id).

On March 1, 2012, the claimant took the Wechsler Intelligence Scale for Children (WISC-IV), a test that is individually administered for children between the ages of six and sixteen and generates a full scale IQ. It also provides five primary index scores that represent a child's ability in discrete cognitive domains. (R. 359.) His scores indicated that he is no longer testing at two standard deviations below the mean. (*Id.*) The claimant received a verbal comprehension score of 95, a perpetual reasoning score of 100, a working memory index score of 94, a processing speed index score of 78, and a full scale IQ of 89, which reflects performance in the average to low average range. (*Id.*)

On September 11, 2012, Dr. Allen J. Stuckey, the claimant's treating psychiatrist,

2

submitted an opinion stating that he has been treating the claimant since 2004 and that the claimant has been diagnosed with attention-deficit/hyperactivity (ADHD), autism disorder, and anxiety disorder NOS (Not Otherwise Specified). (R. 379.) He also stated that the claimant is "socially immature and struggles with schoolwork and routine tasks." Also included in the record are Dr. Stuckey's progress reports from his regular appointments with the claimant, which highlight the claimant's struggles with symptoms of autism, ADHD, and social immaturity. (R. 318–35.)

Indiana State Information, a database for Indiana students' educational and testing history, submitted an educational history for the claimant indicating that, while he has not passed grade-level state standardized tests, he has not been retained in any grade. (R. 418–21.) The Claimant has been working below grade level in math and language arts and requires special education resources; but he spends the majority of his school day in regular classes with assistance from a para-specialist. (R. 418–21, 428.) According to the claimant's speech pathologist, who has known him since the 2010/2011 school year, his speech is now 100% understandable (R. 337.) The speech pathologist noted that the claimant sometimes has difficulty synthesizing information and recognizing social cues. (*Id.*) He continues to work with a speech therapist on recognizing such cues. (*Id.*) One of the claimant's high school teachers reported that the claimant continues to have problems with organization, sustaining concentration, and social interaction. (R. 202.) The claimant's special education teacher also reported that he has an obvious problem with focusing, organizing, and completing homework assignments, as well as problems paying attention and sustaining attention. (R. 242.) The same teacher reported that the claimant does not have a change in functioning after taking medication. (R. 247.) Another

teacher claimed, however, that the medication may be helping the claimant's functioning because she can discern a difference in his behavior. (R. 333.)

The record also contains reports from State Agency psychologists and a psychologist who performed diagnostic testing on the claimant. (R. 355–58, 364–69.) Reports from the State Agency psychologists indicate a marked impairment in the domain of caring for oneself and less than marked or no rating for the other domains. (R. 364–69.) Dr. Craig A. Nordstrom performed diagnostic tests on March 1, 2012, and reported that the claimant had good concentration after taking medication. (R. 357.) He also reported that the claimant gets along with peers and teachers but does not have close friends; and is able to cooperate and complete the testing requirements. Dr. Nordstrom reported that the claimant gets up at 5:30 A.M. and is able to dress himself, make breakfast, and get to school. When he returns home he watches television and feeds the ducks. According to test results, the claimant was scoring in the twenty-third percentile and the low average range of intellectual functioning. There is a statistically insignificant difference between his performance on verbal skills and perceptual reasoning skills. Dr. Nordstrom rendered a diagnosis of mild autistic disorder and ADHD. (R. 358.)

**B.     The Claimant's Testimony**

In August 2013, the claimant testified that he was entering the tenth grade and was earning mostly Cs in both general education and special education classes. (R. 45.) He receives some assistance in his general education classes form a para-specialist. (R. 64.) The claimant also testified that he spends a lot of time on the computer and has friends from school and from "all over the world." (R. 45.) He testified that he gets dressed without help, takes the bus to

4

school, finishes homework at school, and sometimes does chores without being reminded. (R. 51.) He confirmed that he takes medication to focus at school, and that it positively impacts his ability to focus, but that he does not take it in the summer. (R. 52–53.) The claimant stated that his interests include watching "My Little Pony" and interacting with others that enjoy the franchise through online communications. (R. 48–49.) He also said he goes to the park and participates in sports through the Special Olympics. (R. 47–48.)

The claimant's father, James Hinkle, testified as a witness before the ALJ about the condition of his son. According to Mr. Hinkle, the claimant exhibits impaired social functioning through his obsession with My Little Pony and his frequent communication with others through online forums. (R. 65.) Mr. Hinkle stated that the claimant does not always remember to bring homework from school and fails to perform chores without prompting. (R. 74.) Mr. Hinkle also reported that the claimant does not put forth effort or concentrate on tasks that do not come easily to him, but that he can do some work on his own. (R. 64, 71). Although he reported that the claimant is non-violent, he also said the claimant will become "belligerent" (i.e., verbally aggressive) over certain issues. (R. 65–66.) Mr. Hinkle is reluctant to leave the claimant home alone because he cannot trust the claimant's judgment. (R. 71.) Mr. Hinkle said the claimant's lack of judgment is evidenced by the claimant's bike accident that resulted from his attempt to go as fast as he could without using the handlebars even though he had never attempted to do so before. (R. 56–57.) Mr. Hinkle stated that the claimant's hobbies included riding his bike, watching television, playing on walkie talkies, and feeding ducks in the backyard (R. 74–75.) Over the summer, the claimant did not take medication unless he was participating in some kind of "activity." (R. 78.) Mr. Hinkle stated that the claimant rambled more and was more "insistent"

5

with his decisions, however ill-informed, when he was not on his medication. (R. 78–79.)

## C.     ALJ Decision (Three-Step Evaluation)

If a claimant under age 18 has medically improved from his original diagnosis and does not have marked or severe functional limitations, the claimant will no longer be considered disabled. 20 C.F.R. § 416.994a(b)(3)(i). To determine if a claimant under the age of 18 continues to be disabled, the Social Security Administration (SSA) must follow a three-step evaluation process. § 416.994a(b). The first step is determining whether the claimant has had medical improvement compared to his most recent determination that he was disabled (i.e., the CPD). § 416.994a(b)(1). If there is no improvement, the claimant continues with a disability classification, but if there has been improvement, the SSA proceeds to the next step: determining if the claimant's impairments now meet or medically equal the same listing that he had at the time of the CPD. § 416.994a(b)(2); SSR 05-03.p. If the impairments now meet or equal the same listing, the claimant is still disabled, unless an exception to the medical improvement applies. § 416.994a(b)(3)(ii). If the impairment does not meet or equal the same listing, the SSA must proceed to the third step: determining whether the CPD impairments now functionally equal a listing. If they do, the claimant is still disabled, unless an exception to a medical improvement applies. § 416.994a(b)(3)(iii).

To evaluate whether or not a claimant's impairments are functionally equal to a listing, his degree of limitation must be evaluated through six functional domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical

6

well-being. § 416.994a(b)(2). If a child has "marked" limitations in two domains or an "extreme" limitation in one domain, the SSA will find the child to be disabled. § 416.926a(a). A marked limitation in a domain is present when a child's impairment seriously interferes with the ability to independently initiate, sustain, or complete activities. § 416.926a(e)(2). A marked limitation means:

> 1. A limitation that is more than moderate but less than extreme.
>
> 2. The equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
>
> 3. A valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain related activities is consistent with that score.
>
> 4. For the sixth domain of functioning, health and physical well-being, a "marked limitation" would be evidenced by frequent episodes of illnesses because of the impairment(s) or frequent exacerbations of the impairment(s) that result in significant, documented symptoms or signs that occur: (a) on an average of three times a year, or once every four months, each lasting two weeks or more; (b) more often than three times in a year or once every four months, but not lasting for two weeks; or (c) less often than an average of three times a year or once every four months but lasting longer than two weeks if the overall effect (based on length or frequency of episodes) is equivalent in severity.

§ 416.926a(e)(2).

By contrast, a child has an extreme limitation in a domain when his impairment interferes very seriously with his ability to independently initiate, sustain, or complete activities. § 416.926a(e)(3). A child's day-to-day functioning may be very seriously limited when his impairment limits only one activity or when the interactive and cumulative effects of his impairments limit several activities. The regulations explain that an extreme limitation also means:

7

1. A limitation that is more than marked.

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

3. A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain related activities is consistent with that score.

4. For the sixth domain of functioning, health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially above the requirements for showing a "marked" limitation.

§ 416.926a(e)(3).

Using this three-step process, the ALJ determined that the claimant is no longer disabled because of his medically improved condition. At step one, the ALJ determined that medical improvement occurred as of November 20, 2012, based on the criteria for determining medical improvement delineated in § 416.994a(c). At step two, the ALJ found that since November 20, 2012, the claimant's impairments do not medically equal section 112.05C because the claimant no longer has a valid IQ score of 59 or less; nor do his impairments equal section 112.05D or E because the claimant has no valid IQ scores of 70 or less, or other impairments that cause additional and/or significant functional limits. (R. 15–16.) The ALJ also found that the claimant's impairments do not equal section 112.05B because the claimant is able to care for his personal needs in an age-appropriate manner and is able to follow instructions to take standardized intelligence tests, for which he has attained average results. (R. 15.) Lastly, the ALJ found that the claimant's impairments do not equal section 112.05A because he does not have marked or extreme limitations in the areas of cognitive/communicative functioning; social functioning; personal functioning; or concentration, persistence or pace. (R. 16.)

Because the claimant did not fall under a disability diagnosis under steps one or two, the ALJ continued to step three to determine whether the claimant's impairments functionally equaled a listing based on the six aforementioned domains. The ALJ analyzed each of the domains and determined that the claimant had a less than marked limitation in each category. (R. 18–24.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence"

before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal, the Plaintiff does not contest the ALJ's determinations at steps one and two of the three-step evaluation process; but instead, challenges the ALJ's determination at step three that the claimant's CPD impairments do not functionally equal a listing. More specifically, the Plaintiff challenges the ALJ's findings as to the domains of "Attending and Completing Tasks," "Interacting and Relating with Others," and "Caring for Oneself." The Plaintiff contends that the ALJ, in rendering her findings, committed reversible error by failing to build an accurate and logical bridge between the evidence and the result, and by otherwise failing to support her findings with substantial evidence. The Plaintiff argues that this error is particularly harmful in this instance because the ALJ has a heightened duty to develop the record fully and fairly for an unrepresented child-claimant. *Thompson v. Sullivan*, 933 F.2d 581, 585–86 (7th Cir. 1991). The Plaintiff urges the Court to remand this case in order to fully develop the record and to make a fair and accurate determination as to the claimant's disability status.

## A. Attending and Completing Tasks

The domain of Attending and Completing Tasks considers a child's ability to maintain focus and carry out activities. 20 C.F.R. § 416.926a(h)(2)(v). An adolescent without impairment should be able to pay attention to increasingly longer discussions and maintain concentration while reading or independently working. *Id.* The child should be able to plan and budget time to complete tasks on time. *Id.* He should not be easily distracted by peers, nor should he distract his peers. *Id.* Social Security regulation § 416.926a(h)(3) sets forth examples of limited functioning in this domain. These examples include difficulties in attending and completing tasks such as 'becom[ing] easily frustrated and giv[ing] up on tasks, including ones he is capable of completing" or "requir[ing] extra supervision to remain engaged in an activity." *Id.*

In determining that, since November 20, 2012, the claimant has had less than marked limitations in attending and completing tasks, the ALJ noted that at a consultative exam on March 1, 2012, the claimant's concentration was good and he reported having taken his medication that day. (R. 357.) The ALJ further noted that, although the claimant's teachers report that he continues to have issues with focus, some teachers have reported that his medication for ADHD symptoms has improved his functioning. (R. 20, 333; *see also* R. 20, 44 (noting the claimant's testimony that he was performing C-average work at school).) The ALJ also cited the reports from the reviewing psychologist and speech pathologist, both of whom opined that the claimant had a less-than-marked limitation in this domain. (R. 20, 25, 366, 375.)

In assessing the claimant's abilities in this category, the ALJ failed to address Dr. Stuckey's opinions in their entirety. As the Plaintiff contends, there was not an adequate discussion of the evidence from the treating psychiatrist. The ALJ decided not to use Dr.

Stuckey's opinions in this domain, and to assign it "limited weight" in other domains, based on the fact that the statement from September 12, 2012, was not detailed. (R. 25.)[1] This justification ignores the evidence in the record from Dr. Stuckey's progress reports (R. 318–35.) The ALJ is required to discuss all relevant medical evidence. *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984) ("all medical evidence . . . should be considered and discussed by the ALJ"). It is also insufficient to address only some portions of a treating doctor's reports. *Godbey v. Afpel*, 238 F.3d 803, 808 (7th Cir. 2000) (stating that the ALJ may not analyze only that information supporting the ALJ's final conclusion). The ALJ need not provide a "complete written evaluation of every piece of testimony and evidence," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but where contradictory evidence is present, the ALJ cannot "cherry-pick" which evidence is used to make a determination, *see Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). As the only treating physician in the record, all of Dr. Stuckey's findings should have been considered and assigned the appropriate weight. 20 C.F.R. § 404.1527(c)(2). The ALJ has discretion regarding the weight given to evidence, but does not have the discretion to ignore parts of the medical record without "good reason." 20 C.F.R. § 404.1527(d)(2). The ALJ chose to emphasize non-medical opinions, such as opinions from teachers, instead of Dr. Stuckey's opinion.[2]

---

[1] The Plaintiff also argues that the ALJ did not satisfy her duty to develop the record fully and fairly with respect to Dr. Stuckey's opinions. The Plaintiff refers to the letter that Dr. Stuckey wrote in September 2012, and maintains that it required follow-up inquiry. However, Dr. Stuckey's progress notes are also in the record (R. 318–35.) The Seventh Circuit has indicated that, in the interest of conserving the time of the courts and the claimants, the courts should give a certain amount of deference to the ALJ's ascertaining that there is enough evidence to make a determination, even in the case of a pro se litigant. *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

[2] The ALJ is permitted to give more weight to a non-medical source, such as a teacher or parent, if the non-medical opinion has better supporting evidence and is more consistent with the evidence as a

The reports from Dr. Stuckey contain information dating from February 2011 to January 2013, and include information that could impact the final determination (R. 318–35.) In these documents, Dr. Stuckey opines that the claimant has trouble following through with minimal tasks, does not have peer support, has trouble getting to sleep, rarely has reality based conversations, has defiance issues with his teachers, displays limited insight, is experiencing changes in attitude and mood, has obsessions with newspapers, fast-food chains, and taking toys apart, has experienced bullying, has vocal tics (repetition of sounds during inappropriate times, such as at school) and has trouble performing in school. *Id.* Although these reports are less recent than some of the other opinions the ALJ relied upon, there is no evidence that any of these behaviors or symptoms indicated by the psychiatrist have changed. In fact, testimony from Mr. Hinkle indicates that the behaviors and symptoms of concern remain. (R. 55–82.) The ALJ should mention Dr. Stuckey's comments explicitly, then explain how she is weighing this evidence compared with the other evidence to come to a decision. SSR 96-2.

## B.     Interacting and Relating With Others

The domain of Interacting and Relating with Others pertains to a child's ability to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). The regulations provide that an adolescent

---

whole. *See Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence"). This can also occur if the nonmedical source has seen the individual more often and has a greater knowledge of the individual's functioning over time. Soc. Sec. Rul. 06-3p (stating that the length of the relationship between the source and the claimant, the degree to which the source presents relevant evidence to support an opinion, and how well the source explains an opinion all contribute to the weight of non-medical opinions).

without an impairment should be able to initiate and develop friendships with children of the same age and to relate appropriately to other children and adults, both individually and in groups. The child should be able to communicate intelligibly, participate in turn taking and nonverbal exchanges, consider other's feelings and points of view, follow social rules for interaction and conversation, and respond to others appropriately. 20 C.F.R §416.926a(h)(3)(v)(i)(1)(iii). Social Security regulation 20 C.F.R. § 416.926a(h)(3)(v)(i)(3) sets forth examples of limited functioning in this domain which include a child having no close friends or having difficulty communicating using verbal and nonverbal skills. *Id.*

The ALJ found that since November 20, 2012, the claimant has had less than marked limitation in interacting and relating with others. (R. 21.) The ALJ based her determination on the claimant's improved ability to communicate with others and his continued maturity. (*Id.*) She also noted that a teacher reported that the claimant was happy and outgoing but had trouble interpreting body language and social cues (R. 21, 244.) Lastly, she noted that he is in general education classes in high school, but does have some special services including speech therapy to improve verbal and nonverbal communication skills. (R. 21, 337–38.)

As in the previous domain, the ALJ did not address Dr. Stuckey's progress reports. The ALJ included Dr. Stuckey's opinion that the claimant was maturing in his interpersonal social interaction skills and that he was able to separate fantasy from reality, but failed to mention any other details from progress reports. (R. 21, 379.) As previously mentioned, all medical opinions must be discussed; the ALJ should not limit her discussion of evidence to that which supports her final determination. *Godbey*, 238 F.3d at 808. The ALJ cannot "cherry-pick" which evidence is used to make a determination. *See Punzio*, 630 F.3d at 710. Dr. Stuckey's opinions include

information about the claimant's lack of peer support, lack of reality based conversations, issues with defiance with teachers, attitude and mood changes, obsessions, bullying, and verbal tics would all have a bearing on the claimant's classification in this domain but were not mentioned. (R. 318–35.) The ALJ must address this additional information and assign them proper weight, unless the ALJ expresses a "good reason" not to rely on these statements. 20 C.F.R. § 404.1527(d)(2).

There are three ancillary issues with the ALJ's discussion of this domain. First, as the Plaintiff notes, the ALJ misquoted the teacher's assessment of the claimant's social abilities; the teacher stated he has a "serious problem" and the ALJ restated this as "some difficulty." (R. 16, 244.) The ALJ also fails to mention Mr. Hinkle's testimony and Mrs. Hinkle's concerns about the claimant's lack of "real friends," which is relevant to this domain. (R. 65.) The ALJ is required to address all relevant information, not just those pieces of evidence that support a conclusion. *Godbey*, 238 F.3d at 808.

### C.    Caring for Oneself

This domain considers how well a child maintains healthy emotional and physical state, including how well the child satisfies his physical and emotional wants and needs in appropriate ways. 20 C.F.R.§ 416.926a(k). It also includes how the child deals with stress and changes in the environment and whether the child takes care of his own health, possessions, and living area. *Id.* Social Security regulation, § 416.926a(k)(3), sets forth examples of limited functioning in this domain, such as "engages in self-injurious behavior," "does not spontaneously pursue enjoyable activities or interest" and "does not dress or bathe age-appropriately." The regulations provide

that an adolescent without an impairment should begin to feel increasingly independent in all of his day-to-day activities. *Id.*

The ALJ found that since November 20, 2012, the claimant has had less than marked limitation in the ability to care for himself. (R. 22.) The ALJ based her finding on testimony from the claimant's parents about his ability to take care of his personal needs and abstaining from dangerous behaviors. (R. 22.) She also noted that the claimant was not on medication during the summer, but acknowledged that he was not allowed to be left without supervision and that he injured himself on his bike. *Id.* Lastly, the ALJ relied upon evidence that he could dress and bathe himself, and that teachers did not report problems in the area. (R. 22, 63, 246.)

The Plaintiff's challenges to the ALJ's findings for this domain are not persuasive. The Plaintiff argues that it was misleading to state that the claimant's teacher did not report any problems in this area in the September 2013 questionnaire because she did not rate this area at all, but left it blank. (R. 246.) The teacher's silence was only one of the pieces of evidence the ALJ considered, and the only evidence the Plaintiff cites to counter those other pieces are the grades from two State Agency psychologists who considered the claimant "Marked" in this domain and cited his need for help with self-care. With regard to the psychological opinions, the ALJ noted that additional evidence since the last Agency review and testimony at the hearing revealed that the claimant's problem were more in the area of social functioning than in self-care. (R. 25.) Accordingly, the ALJ did not rely on the State Agency opinions for the domain of caring for oneself. *Id.* The Court finds that the ALJ adequately explained why she was relying on other evidence in the record instead. The State Agency opinions contained the conclusory statement that the claimant required "help with self-care," but did not identify

16

particular physical tasks, such as feeding, dressing, toileting, and bathing in an age-appropriate way, or taking medications, that were problematic for the claimant. Certainly, the ALJ was entitled to rely more heavily on the opinions and testimony from sources, both medical and non-medical, who had actually been in contact with the claimant and could describe his activities at home, school, or during appointments. *See* 20 C.F.R. § 416.926a(b)(3), (e)(1)(ii) (describing the appropriate sources of information about a child's functioning). Substantial evidence supported the ALJ's finding that the claimant had less than marked limitations in the ability to care for himself as a result of his impairments.

**CONCLUSION**

For the reasons stated above, the decision of the ALJ is reversed and remanded for proceedings consistent with this Opinion.

SO ORDERED on August 11, 2016.

                                                       s/ Theresa L. Springmann
                                                       THERESA L. SPRINGMANN
                                                       UNITED STATES DISTRICT COURT